IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HEATHER L. LONG                                                    PLAINTIFF

         v.                            CASE NO.        12-2099

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed her applications for SSI on September 10, 2009 , alleging an onset date of December 1, 2008, due to plaintiff's Dyslexia and Anger Issues (T. 162)[2].  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on September 17, 2010.  Plaintiff was present and

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2]Plaintiff amended her onset date to August 28, 2009 at the time of the hearing. (T. 24).

-1-

represented by counsel.

At the time of the administrative hearing, plaintiff was 24 years of age and possessed a 9th Grade education.  The Plaintiff  had past relevant work ("PRW") experience as a  Garden Center worker for about one month and a Waitress/Kitchen Helper for one month (T. 163).

On December 2, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's mood disorder and learning disorder were severe but did not meet or equal any Appendix 1 listing.  T. 11.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform " a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember and carry out simple, routine and repetitive tasks wherein the complexity of the tasks is learned and performed by rote. The claimant can respond appropriately to supervision that is simple, direct and concrete, to co-workers, and to the usual work situations, but can have only occasional contact with the general public." T. 13.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  bus person, dishwasher, and industrial cleaner.  T. 18.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial

evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.  Discussion**:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The Plaintiff contends that the ALJ committed error by failing to properly develop the record. (ECF No. 12, p. 10).

-4-

The Plaintiff  was referred to Dr. Spray who performed a Mental Diagnostic Evaluation and Intellectual Assessment on October 8, 2008.  The Plaintiff scored a Verbal Comprehension Index of 76 and a Verbal IQ of 76.  Performance IQ was 106 and Full Scale IQ of 88.  (T. 230). Dr. Spray noted that the Plaintiff had "relative deficit in verbal skills" but that she was not mentally retarded. He also noted that he suspected she had a reading disorder and receptive language disorder. (T. 231).  Almost a year later the Plaintiff filed her application for SSI on September 10, 2009 alleging inter alia dyslexia[3].  (T. 137).  Dyslexia may affect both production and understanding of written language, which is often restricted further by problems with auditory memory, speech production, and naming or word finding. Underlying weaknesses in verbal language are often present.  ( See http://www.merckmanuals.com/).  The Plaintiff was promptly referred to Dr. Terry L. Efird on October 15, 2009 for a Mental Diagnostic Evaluation. T. 235.  Dr. Efird diagnosed the Plaintiff with Adjustment Disorder. (T. 237).  It does not appear that any test were administered to determine her reading level.

On October 26, 2009 the Plaintiff was seen by Brad Williams, Ph. D.  He provided a Psychiatric Review Technique which found that the Plaintiff had an Adjustment Disorder (T. 247) and a learning disability. (T. 248). He determined that she was not Markedly Limited in any area of Functionality. (T. 254). He then issued a Mental RFC Assessment finding that the Plaintiff " is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." (T. 242).

---

[3]Dyslexia is a learning disorder characterized by difficulty reading, spelling and recalling known words. http://www.mayoclinic.com/health/learning-disorders/MY02259.

The Plaintiff was then seen by Patricia Studer, Psy. D., on December 16, 2009 for a Mental Diagnostic Evaluation.  Ms. Studer noted that "Heather shows good adaptive strengths in the development of compensatory techniques in learning. For example, she uses her fingers to keep track of verbally administered numbers; she uses mnemonic devices such as making sentences out of unrelated words to remember them. She also translates material she wants to remember into a song and then she can remember by recalling the song."  T. 262.

The Plaintiff evidently reported to Ms. Studer that she was "held back in the 3rd grade, and was in special education classes from the 6th grade on. (T. 259).  The Plaintiff testified that she attended but did not complete the 9th grade because it became "too hard". (T. 31-32).  She testified that she could not obtain her GED because she "didn't understand any of it" and that she has a kindergarten to first grade reading level.  (T. 33).  She testified that she shopped by pictures and she buys food with food stamps.  If she uses cash she "trusts" the individuals to give her the right change back. (T. 35). It took the Plaintiff "34 to 38 times" to pass her driving test and they ultimately had to give it to her orally. (T. 37). When she worked as a waitress she would "mess up the orders" and had trouble with even simple instructions. (T. 38).

The Plaintiff's mother testified that the reason the Plaintiff quit school was because "she was like 18 in the 9th grade" and "she was embarrassed" and that she had been held back several different times. (T. 45).  Her mother also testified that the Plaintiff had oxygen depravation when she was born and she suspected that as the cause for her daughter's learning difficulties. (Id.). She further testified that the Plaintiff cannot maintain her check book and has to get assistance from the bank almost every day to find out how much is in her account (T. 46) and that she cannot read even the simplest of books (T. 47). She also testified that her daughter could not

understand anything she reads. (T. 48).

The Plaintiff's attorney wrote the ALJ on July 13, 2010 stating that it was his belief, after reviewing the record, that the Plaintiff "needs a more complete battery of psychological tests in order to determine her proper mental residual functional capacity. She cannot read, write or do simple math, and has severe comprehension problems. In order to determine this, she needs at least an MMPI rate; a depression inventory and a Beck anxiety inventory; as well as the Nelson-Denny Reading Test.  These will assist in determining her true residual functional capacity report, and I am sure that there are other tests that the doctor would give for a full battery of exams."  (T. 219). While the Nelson-Denny Reading Test may not be appropriate for a dyslexic individual reading at a very low level there are a number of test that could have been administered to determine the Plaintiff's reading and understanding ability.

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)).  While the ALJ is under no duty to "go to inordinate lengths to develop a claimant's case[,]" *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir.1977), it is also true that he must "make an investigation that is not wholly inadequate under the circumstances." *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir.1975). "There is no bright line test for determining when the [Secretary] has ... failed to develop the record. The determination in each case must be made on a case by case basis." *Lashley v. Secretary of Health & Human Serv.*, 708 F.2d 1048, 1052 (6th Cir.1983). *Battles v. Shalala*  36 F.3d 43, 44 -45 (C.A.8

(Ark.),1994).

Here the Plaintiff's reading and math levels are crucial. The ALJ did not order any additional testing and based his RFC upon the existing record. The VE found that based upon the RFC determination the Plaintiff would be able to perform the representative jobs of bus person (DOT 311.677-018), dishwasher (DOT 318.687-010), and industrial cleaner (DOT 381.687-018). (T. 50). The ALJ hypothetical to the VE was based upon a person with a "marginal education" (T. 50) and he asked the how it would affect the ability to do those jobs if the person was "illiterate", to which the VE responded that "it would have on impact on the occupations that I discussed". (T. 51).

Upon questioning by counsel the VE acknowledged that the dishwasher would require a reading level 2 and a math level of 1. (T. 52).   The VE testified that "Reading level 2 would be passable vocabulary of 5,000 to 6,000 words. Read at rate of 100 to 215 words per minute. Read adventure stories, comic books, looking up unfamiliar words in dictionary for meaning, spelling and pronunciation. Read instructions for assembling model cars and airplanes" and that Math level 1 required an individual to " [A]dd and subtract two digit numbers, multiply and divide tens and one hundreds by two, three, four and five, perform" (T. 52-53).   The VE then admitted, notwithstanding his previous testimony,  that if an individual was illiterate and could not read or write (to that level) that job would be eliminated.

The VE also testified that the bus person would have to have a reading level of 1 and math level of 1 (T. 53) which would require the individual to "Recognize meaning of 2,500 two or three syllable words, read it at rate of 95 to 120 words more minute. Compare similarities and differences between words and between series of numbers." (T. 54).   The Industrial Cleaner was

not discussed but a review of the DOT title shows the reading level to be 2 and the math level to be 1. ( http://www.occupationalinfo.org/38/381687018.html).

There is nothing in the record to show that the Plaintiff can perform at reading level one or two or math level one and the testimony and evidence seems to the contrary. A hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies. *See, e.g., Roe v. Chater*, 92 F.3d 672, 674 n. 2 (8th Cir.1996)  There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994).  The court believes that remand is necessary to allow the ALJ to seek out test specifically designed to measure the Plaintiff's reading and math skill in a form compatible with the language of the regulation.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this May 22, 2013.

/s/ J. Marschewski

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE